UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Cr. No. 08-10122-MLW |
| | ) |
| MODESTO CASTILLO, | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

WOLF, D.J.                                        March 29, 2018

I. INTRODUCTION

In June 2010, a jury convicted defendant Modesto Castillo of conspiracy to distribute cocaine and possession with intent to distribute cocaine. The court sentenced him to 188 months in custody, which was later reduced to 151 months in custody pursuant to a retroactive amendment to the United States Sentencing Guidelines. Castillo has moved to vacate his conviction and sentence under 28 U.S.C. §2255, and for discovery. He alleges that his sentence, which was based in part on a finding by the court that he was responsible for possessing or distributing approximately 140 kilograms of cocaine, violated his Sixth Amendment rights under United States Supreme Court in Alleyne v. United States, 570 U.S. 99, 116 (2013). Castillo subsequently moved to amend his Petition with a claim that the laboratory results relied on to identify the substance seized from his coconspirator as cocaine were potentially falsified by Annie Dookhan, a former

chemist at the Massachusetts Department of Health Hinton State Laboratory.

The decision in Alleyne was decided after Castillo's conviction and sentence became final and does not apply retroactively. See Butterworth v. United States, 775 F.3d 459, 468 (1st Cir. 2015), cert. denied, 135 S. Ct. 1517 (2015). In addition, Castillo does not provide any reason to believe that Annie Dookhan tested the samples of cocaine recovered from his coconspirator, or that it is reasonably likely he would have been acquitted if her misconduct had been disclosed to him before trial. The evidence at trial indicates that the drugs were analyzed at the Drug Enforcement Administration's Northeast Laboratory, not the Hinton State Laboratory. Moreover, there was other, overwhelming evidence that the substance seized on April 5, 2008 from his coconspirator, Raphael Mercedes, was cocaine. Therefore, Castillo's motions for discovery and to vacate his sentence are unmeritorious and are being denied.

II. FACTUAL BACKGROUND

On April 5, 2008, the Massachusetts State Police ("MSP") seized 84 kilograms of what they suspected to be cocaine from a pickup truck in Lynn, Massachusetts. The police arrested six individuals in connection with the seizure, including Castillo. On May 15, 2008, Castillo was charged with conspiracy to distribute

and possession with intent to distribute five or more kilograms of cocaine.

Prior to trial, the government filed an exhibit list identifying Exhibit 12 as a "Representative Sample of 10 kilograms of cocaine seized from 84 kilograms of cocaine seized on 04/05/08." Docket No. 214-1 at 7. Castillo and the government stipulated:

> That the substance that has been marked for identification as Government's Exhibit 12, was analyzed by the Drug Enforcement Administration's Northeast Laboratory and found to contain cocaine. The total weight of the substance seized that was found to be cocaine was 84.08 kilograms. Following the chemical analysis, Government's Exhibit G was returned to the Drug Enforcement Administration in Boston, Massachusetts, for use at trial.

Docket No. 210 at 1.

Castillo's trial began on June 16, 2010. At trial, MSP Sergeant Thomas Quinn testified that the drugs seized on April 5, 2008, "were taken...from Lynn, Massachusetts to Framingham, where the state police narcotics unit is" and subsequently "transferred from state police custody to DEA custody." June 17, 2010 Tr. at 101-02. Exhibit 12 was then admitted and identified by Sergeant Quinn. Id. at 105-06. The stipulation regarding that exhibit was read into evidence. Id. at 110-11. On June 21, 2010, the jury found Castillo guilty of conspiracy to distribute and possession with intent to distribute five or more kilograms of cocaine. See Docket No. 219.

Castillo was sentenced on September 21, 2010. The court found that Castillo was responsible for a total of 139.08 kilograms of cocaine, including the 84 kilograms seized on April 5, 2008, 30 kilograms given to the owner of the auto body shop where the cocaine was delivered, and 25 kilograms from a prior uncharged transaction. See PSR at ¶21; Sept. 21, 2010 Tr. at 8. The court calculated Castillo's advisory guideline range using this figure. Id. at 11-12. It sentenced him to 188 months in prison, which was at the time the low end of the guideline range. Id. at 11, 21-22. Castillo's conviction was affirmed on appeal. See Case No. 10-2264 (1st Cir. Oct. 26, 2012)(Docket No. 257). Castillo did not file a petition for certiorari. His conviction became final on January 24, 2013. The court later reduced Castillo's sentence to 151 months in custody pursuant to U.S.S.G. Supp. to App. C, Amendment 782, which lowered the guidelines for his offense and applied retroactively under 18 U.S.C. §3582(c)(2) and U.S.S.G. §1B1.10(d). See Nov. 22, 2016 Memorandum and Order (Docket No. 322).

In a series of investigations from 2011 through at least 2012, it was discovered that Annie Dookhan, a chemist at the Massachusetts Department of Health Hinton State Laboratory in Jamaica Plain, engaged in repeated misconduct in connection with drug samples she tested from 2003 to 2012. As recently, succinctly summarized by Judge George O'Toole,

> Dookhan's offenses are now well-known. She worked as chemist at the Hinton Lab from 2003 through 2012. In 2011, Dookhan was cited for a breach of laboratory protocol. The [Department of Health] launched an investigation which exposed an alarming pattern of lapses and irregularities at the Hinton Lab. Dookhan was ultimately indicted and pled guilty to twenty-seven criminal charges, including perjury and evidence tampering, admitting among other things that she rigged test results by contaminating negative samples with known drugs from completed tests and dry-labbing (i.e., falsely certifying she had tested drug samples when she had only given them a visual examination).

United States v. Fortes, 2016 WL 8692835, at *2 (D. Mass. Sept. 30, 2016). The Massachusetts Supreme Judicial Court also found that Dookhan falsified the substance of reports intended to verify, before each test, the proper functioning of a sophisticated machine used to confirm the analyses of other chemists. See Commonwealth v. Scott, 467 Mass. 336, 340-41 (2014).

On June 17, 2013, the Supreme Court decided in Alleyne v. United States, which held that under the Sixth Amendment to the United States Constitution, "facts that increase mandatory minimum sentences must be submitted to the jury" and found beyond a reasonable doubt. 570 U.S. 99, 116 (2013); see also United States v. Ramirez-Negron, 751 F.3d 42, 48 (1st Cir. 2014); United States v. Barnes, 769 F. 3d 94, 98 (1st Cir. 2014).

Castillo subsequently filed a petition to vacate his sentence under 28 U.S.C. §2255 based on Alleyne, 570 U.S. 99. He asserts that the court unconstitutionally enhanced his sentence based on a judicial finding, by a preponderance of the evidence, that he

5

was responsible for distributing 114 kilograms of cocaine. Jan. 23, 2015 Memo. (Docket No. 293) at 1, 4-7. He later moved to amend the Petition with a claim that Annie Dookhan "tampered" with the laboratory testing of the substance seized on April 5, 2008 and "falsely certified" it as cocaine, and that the government failed to disclose the misconduct before trial. Id. at 5-6. He asserts that "there is a reasonable probability that, but for the government's and/or Ms. Dookhan's misconduct, the jury would not have found him guilty for the alleged cocaine as charged." Id. at 5. He asserts that the identification of the substance as cocaine at trial without disclosing Dookhan's misconduct therefore "resulted in[] a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedures." Id. at 5-6.

III. LEGAL STANDARDS

A. 28 U.S.C. §2255

28 U.S.C. §2255 provides a federal prisoner with a means to collaterally attack her sentence. Specifically:

> 28 U.S.C. § 2255 sets forth four grounds upon which a federal prisoner may base a claim for relief: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence "is otherwise subject to collateral attack."

6

Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994) (quoting Hill v. United States, 368 U.S. 424, 426-27 (1962)). A pro se petition must be "liberally construed...[and] a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

When a prisoner files a §2255 petition, 28 U.S.C. § 2255(b) requires that:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

28 U.S.C. §2255(b). As the First Circuit wrote in United States v. McGill, 11 F.3d 223 (1st Cir. 1993):

> We have distilled these principles into a rule that holds a hearing to be unnecessary "when a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974). In other words, a "§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'" Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984) (citations omitted).

Id. at 225-26 (some citations omitted); see also United States v. Panitz, 907 F.2d 1267 (1st Cir. 1990); David v. United States, 134

7

F.3d 470, 478 (1st Cir. 1998). "Moreover, when...a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." McGill, 11 F.3d at 225.

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Rather, the petitioner must show "good cause" for discovery, meaning that he must present "specific allegations" that give the court a "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is...entitled to relief." Id. at 908-09; Donald v. Spencer, 2011 WL 3768943, at *1 (1st Cir. Aug. 26, 2011). "[T]he scope and extent of such discovery is a matter confided to the discretion of the District Court." Bracy, 520 U.S. at 909; Rule 6(a) of the Rules Governing Section 2255 cases.

IV. DISCUSSION

As explained earlier, in his initial petition, Castillo asserts that his sentence, which was based on a judicial finding that he was responsible for 114 kilograms of cocaine, is unconstitutional under Alleyne, 133 S. Ct. 2151. However, the First Circuit has held that "the rule announced in Alleyne is not

8

retroactively applicable to sentences on collateral review on an initial habeas petition." Butterworth, 775 F.3d at 468. Castillo's Alleyne claim is, therefore, "inadequate on its face." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974) (claims that "state grounds for relief not cognizable at all under §2255" are facially inadequate).

Castillo's motion to amend his §2255 petition to add allegations that the government failed to disclose the fact that Annie Dookhan's tampered with and falsely certified the drugs seized from Mercedes as cocaine is "'conclusively refuted...by the files and records of the case.'" McGill, 11 F.3d at 226 (quoting Moran, 494 F.2d at 1222). A defendant may establish a constitutional violation entitling him to a new trial by showing that (1) the government failed to disclose material exculpatory evidence and (2) there is a reasonable probability that, if the evidence had been disclosed to the defense, the result of the trial would have been different. See United States v. Del-Valle, 566 F.3d 31, 40 (1st Cir. 2009). However, Castillo does not mention any basis for his belief that the substance recovered from Mercedes was tested by Dookhan, or that it was ever at the Massachusetts Department of Health Hinton State Laboratory in Jamaica Plain, Massachusetts.

In fact, the record conclusively refutes his contention. At trial, Sergeant Quinn testified that the substance was transferred

from the Massachusetts State Police narcotics unit in Lynn, Massachusetts to DEA custody, and the parties stipulated that it "was analyzed by the Drug Enforcement Administration, [at] the Northeast Laboratory, and was found to contain cocaine." June 17, 2010 Tr. at 105-06. Defense counsel did not challenge that portion of Sergeant Quinn's testimony on cross-examination. He did not object to the statement in paragraph 10 of the Presentence Report that "the substance recovered from the pickup truck was later subjected to DEA laboratory analysis and determined to contain a net weight of 84.08 kilograms of cocaine." In addition, in response to Castillo's motion to amend, the government submitted a DEA chain of custody record, which is admissible as a record of regularly conducted activity. See Fed. R. Evid. 803(6). The record corroborates that the substance was transferred from the pickup truck to the Massachusetts State Police Headquarters in Framingham, Massachusetts, and then to the DEA's Northeast Laboratory, without ever being taken to the Hinton State Laboratory. There is no reason to believe Sargeant Quinn had a motive to falsify his testimony, or that the DEA would have falsified the custody record. As indicated earlier, Dookhan's misconduct was not discovered until after the trial, in 2011.

Moreover, there was overwhelming circumstantial evidence independent of the laboratory analysis that the substance was cocaine. "[I]dentification of a controlled substance does not

require direct evidence if available circumstantial evidence establishes its identity beyond a reasonable doubt." United States v. Walters, 904 F. 2d 765, 770 (1st Cir. 1990). "Proof based on scientific analysis or expert testimony is not required to prove the illicit nature of a substance, and identification of a substance as a drug may be based on the opinion of a knowledgeable lay person." Id. "Circumstantial evidence establishing identification may include a sales price consistent with that of cocaine; the covert nature of the sale; on-the-scene remarks by a conspirator identifying the substance as a drug; lay experience based on familiarity through prior use, trading, or law enforcement; and behavior characteristic of drug sales." United States v. Dominguez, 992 F. 2d 678, 681 (7th Cir. 1993).

At trial, one of Castillo's coconspirators, Rafael Mercedes, testified that Castillo arranged to have two shipments of kilogram blocks of cocaine unloaded from a tractor trailer, placed into Mercedes' pickup truck at an auto body shop on 315 Lynnway in Lynn, Massachusetts, and transported to a private house in Dedham, Massachusetts. See June 18, 2010 Tr. at 78, 86-88. Sergeant Quinn testified that multiple kilograms of cocaine were secreted in the tractor trailer's bed under lengths of metal and then in the bed of Mercedes' pickup truck in three suitcases. See June 17, 2010 Tr. at 103-04. Mercedes testified that Castillo identified the substance being transported as cocaine, and that Mercedes was paid

$10,000 to transport it. See June 18, 2010 Tr. at 78, 100. When Massachusetts State Police Officers stopped Mercedes' pickup truck after the second, April 5, 2008 transaction, a K9 dog "alerted to the [pickup] truck." Id. at 47. In view of this evidence of multiple, surreptitious transactions in tens of kilograms of a substance identified by the defendant as cocaine, there is no reasonable probability that the jury would have had a reasonable doubt that the seized substance was cocaine.

Therefore, the record "conclusively show[s] that [Castillo] is entitled to no relief." 28 U.S.C. §2255(b); see also McGill, 11 F.3d at 225-26. In addition, the court has no "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate" that the government failed to disclose any exculpatory evidence, or if it did, that the result of the trial would have been different. Bracy, 520 U.S. at 908-09; Del-Valle, 566 F. 3d at 40. Accordingly, Castillo has not established good cause for discovery.

In addition, the court finds that reasonable jurists could not debate the conclusions that Castillo is not entitled to discovery or a hearing concerning his claims, and that his claims are unmeritorious. Therefore, a certificate of appealability is also being denied. See Miller-El v. Cockrell, 537 U.S. 322, 338 (2003).

V.  ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The Motion to Vacate (Docket No. 293) is DISMISSED with prejudice.

2. The Motion to Amend his Motion to Vacate (Docket No. 301) is DENIED.

3. The Motion for Discovery (Docket No. 303) is DENIED.

4. A Certificate of Appealability is DENIED.

                                                        _____
                                                        UNITED STATES DISTRICT JUDGE